UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                :
KAREN FRISKY-WATSON,                            :
                                                :    CASE NO. 1:15-CV-00083
          Plaintiff,                            :
                                                :
v.                                              :    OPINION & ORDER
                                                :    [Resolving Docs. 17, 18]
FORD MOTOR COMPANY,                             :
Retirement Board of Administration,             :
                                                :
          Defendant.                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this ERISA case, Plaintiff Karen Frisky-Watson seeks surviving spouse benefits that she says Defendant Ford Motor Company-UAW Retirement Plan Board of Administration (the "Board") owes her. The Defendant Board responds that the benefits are not due because Charles Watson, Plaintiff's husband, never submitted a completed and written election form requesting surviving spouse benefits. Both Plaintiff Frisky-Watson and the Defendant Board move for judgment on the administrative record.[1]

For the reasons below, the Court **GRANTS** the Defendant Board's motion for judgment on the administrative record and **DENIES** Plaintiff Frisky-Watson's motion for judgment on the administrative record.

**I. Procedural and Factual Background**

On April 1, 2006, Charles Watson retired from the Ford Motor Company after 35 years of

---

[1] Doc. 17 (Plaintiff Frisky-Watson); Doc. 18 (the Defendant Board). Both parties have also filed responses. Doc. 19 (Plaintiff Frisky-Watson); Doc. 20 (the Defendant Board).

Case No. 1:15-CV-00083
Gwin, J.

service.[2] At that time, Charles Watson was not married, and therefore did not elect surviving spouse benefits.[3]

On October 12, 2012, Plaintiff married Charles Watson.[4] On October 29, 2012, Charles Watson called Ford's National Employee Services Center, a call center run by Ford and separate from the Defendant Board. Watson told the call center representative about his marriage, and indicated a desire to add survivor benefits for Plaintiff Frisky-Watson.[5] The call center representative gave Charles Watson the Board's telephone number and the UAW Retiree Medical Benefits Trust's telephone number.[6] The record contains no indication that Charles Watson ever called either of these numbers or completed a survivor benefits election form.[7]

On January 31, 2014, Charles Watson died.[8] On February 11, 2014, Plaintiff Frisky-Watson made a written request to the Plan Administrator for survivor benefits.[9] On March 18, 2014, the Plan Administrator denied Plaintiff's request, citing Charles Watson's failure to file a surviving spouse benefits election.[10]

On April 13, 2014, Plaintiff Frisky-Watson appealed the Plan Administrator's decision to the UAW Retirement Board.[11] On June 3, 2014, the UAW Retirement Board denied her appeal, again

---

[2] Doc. 16 at 1, 16.
[3] *Id.* at 2.
[4] *Id.* at 5.
[5] Doc. 17-1 at 16.
[6] *Id.*; *see* Doc. 20 at 5.
[7] *See* Doc. 16.
[8] *Id.* at 3.
[9] *Id.* at 4.
[10] *Id.* at 8.
[11] *Id.* at 9-10.

-2-

Case No. 1:15-CV-00083
Gwin, J.

citing Charles Watson's failure to properly elect surviving spouse benefits.[12]

Plaintiff Frisky-Watson then filed this suit under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA")[13] to recover the surviving spouse benefits she alleges the Plan entitles her to.

## II. Legal Standard

A court reviewing an administrator's decision under a benefit plan subject to ERISA applies a de novo standard of review unless the administrator possessed discretionary authority to determine benefit eligibility or construe the terms of the plan.[14] Where the administrator has such authority, a court reviews such a decision under the arbitrary and capricious standard.[15] In this case, the Plan provides that the Board has discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the plan.[16] Accordingly, the arbitrary and capricious standard of review applies. Under this standard, the Court "must uphold the administrator's decision if [the administrator's] interpretation of the Plan's provisions is reasonable."[17]

Typically, "when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made."[18] But when doing

---

[12] *Id.* at 20. The letter is incorrectly dated June 3, 2013. *See* Doc. 18-1 at 6 n.5.
[13] 29 U.S.C. § 1132(a)(1)(B).
[14] *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).
[15] *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 605 (6th Cir. 2014) (internal citation omitted).
[16] Doc. 16-2 at 176.
[17] *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (citing *Morrison v. Marsh & McLennan Cos.*, 459 F.3d 295, 300 (6th Cir. 2006) (citing *Firestone*, 489 U.S. at 111-15)) (internal quotation marks omitted) (alteration in original).
[18] *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)).

Case No. 1:15-CV-00083
Gwin, J.

so is necessary to resolve a claimant's procedural challenge, the court may consider evidence outside the administrative record.[19]

### III. Discussion

Plaintiff Frisky-Watson sues under Section 502(a)(1)(B) of ERISA to challenge the Board's denial of her request for surviving spouse benefits. Section 502(a)(1)(B) allows an ERISA plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[20]

**A. The Board's Interpretation of the Plan Was Not Unreasonable**

The key question in this case is whether the Defendant Board reasonably interpreted the Plan to require a completed election form to elect survivor benefits or whether, as Plaintiff Frisky-Watson contends, Charles Watson's phone call was enough.

The most relevant Plan language is as follows:

> No *election* provided hereunder shall become effective under any circumstance for any retired employee *whose completed election form is received by the Board* after the first day of the month in which the retired employee has been married one year except that for a retired employee who is married on October 1, 1979, *such election form* must be received by the Board before April 1, 1980 or, if later, before the first day of the month in which the retired employee has been married one year. On or after October 1, 1999, *such election* must have been received by the Board before the first day of the month in which the retiree has been married 18 months. However, if the election is made after the retiree's one year anniversary of the employee's marriage but before the end of the 18 month election period, the coverage shall commence on the one year anniversary date and the applicable reduction shall commence on the first day of the month following the one year anniversary date.[21]

---

[19] *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 806 (6th Cir. 2004) (citing *Wilkins*, 150 F.3d at 618).
[20] 29 U.S.C. § 1132(a)(1)(B).
[21] Doc. 16-2 at 87 (emphasis added).

-4-

Case No. 1:15-CV-00083
Gwin, J.

The specific sentence which applies to Plaintiff is: "On or after October 1, 1999, *such election* must have been received by the Board before the first day of the month in which the retiree has been married 18 months." This provision lays out three steps that must be taken to establish survivor benefits: (1) An election of survivor benefits must be made; (2) the Board must receive that election; and (3) the election must be received within the first 18 months of marriage.

The question before the Court is whether the Board's interpretation of "such election" as requiring a completed election form is a reasonable one. Although the phrase "such election" may be ambiguous if considered in a vacuum, it must be read in context. The Plan's previous two uses of "election" were: "completed election form" and "such election form." This provides support for the Defendant Board's reading of "such election" to refer to the election form described in the preceding sentences.

Moreover, the previous paragraph in the same section of the Plan sheds further light on the meaning of "such election." There, the Plan says that survivor benefit coverage "shall become effective on the first day of the third month following the month in which the Board receives a *completed election form* . . . ."[22] This language ties the commencement of benefits to the receipt of a completed election form, further supporting the Defendant Board's assertion that "election" refers to the "election form."

Finally, as the Defendant Board points out, not all retirees will want to elect surviving spouse benefits. Doing so results in lower monthly payouts while the retiree is still alive.[23] Because a survivor benefits election results in lower monthly benefits, treating a communication as an election

---

[22] *Id.* at 86 (emphasis added).
[23] Doc. 20 at 6.

Case No. 1:15-CV-00083
Gwin, J.

when the retiree did not intend for it to be so treated would harm the retiree. Where the plan language permits, adopting uniform bright-line procedures for indicating intent is an approved method for simplifying plan administration. Such procedures ensure that plan administrators do not incorrectly speculate as to plan participants' intent.[24]

In the present case, the Plan establishes a bright-line procedure for electing surviving spouse benefits that Charles Watson did not use. It was not unreasonable for the Board to rely upon the language of the Plan rather than trying to intuit Charles Watson's intent, and it was therefore not unreasonable for the Board to conclude that Plaintiff Frisky-Watson is not entitled to surviving spouse benefits.

**B. Plaintiff Frisky-Watson's Procedural Challenge Fails**

Plaintiff Frisky-Watson also brings a procedural challenge to the Defendant Board's decision. Specifically, Frisky-Watson complains that the Board failed to consider evidence that Charles Watson called Ford and attempted to elect surviving spouse benefits.[25]

Plaintiff Frisky-Watson further argues that because she is raising a procedural challenge–that the Board failed to consider certain evidence–the Court should consider the call log that references Charles Watson's call to Ford's employee call center.[26] This call log was included in Charles Watson's "retirement jacket," but not in the administrative record. Conversely, the Defendant Board argues that since the call log was not part of the administrative record, it should be excluded from

---

[24] *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009) ("The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." (internal quotation marks, brackets, and citation omitted)).

[25] Doc. 17 at 7.

[26] *Id.* at 6.

Case No. 1:15-CV-00083
Gwin, J.

consideration.[27] The Court considers the call log because doing so is necessary to resolve Plaintiff's procedural claim.[28]

Plaintiff Frisky-Watson made the Board aware of Charles Watson's call in her initial claim for benefits.[29] The Defendant Board's denial of benefits says that "the Retirement Board had no record that Mr. Watson contacted the Retirement Board Office requesting the election form to add you to his pension benefits nor was any marriage information submitted to the Retirement Board."[30] Plaintiff Frisky-Watson claims this is a clear indication that the Board ignored the phone call despite being informed of it in her initial claim for benefits.[31]

But, as the call log indicates, it is factually true that Charles Watson never actually contacted the Retirement Board Office.[32] The only call the call log indicates Charles Watson made was to Ford's employee call center, a separate entity from the Defendant Board.[33] The Defendant Board's statement that Charles Watson never contacted it is therefore not contradicted by the call log. Accordingly, the call log does not demonstrate that the Defendant Board ignored submitted evidence.

Moreover, even if the call log is considered, it does not help Plaintiff. The phone log indicates Charles Watson called Ford's Employee Services Center; Watson did not call the Board. As important, the cursory notes from Watson's call suggest that Ford (not the Board) told Watson he should call the Board if he wanted to elect survivor benefits. If Ford had told Watson that his

---

[27] Doc. 20 at 2 (citing *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)).
[28] *Putney*, F. App'x at 806 (citing *Wilkins*, 150 F.3d at 618).
[29] Doc. 16 at 4.
[30] *Id.* at 20.
[31] Doc. 17 at 7-8.
[32] Doc. 20 at 5; *see* Doc. 17-1 at 16.
[33] *Id.*

Case No. 1:15-CV-00083
Gwin, J.

October 29, 2012, call was sufficient to obtain survivor benefits, there would be little reason to give Watson the number. The call center notes do not support an inference that the Board acted unreasonably in denying survivor benefits.

**C. Charles Watson's Death Does Not Affect the 18 Month Requirement**

Finally, Plaintiff Frisky-Watson argues that Charles Watson's death less than 18 months after she married him made it impossible for him to complete the required election within the allotted period.[34] Frisky-Watson thus suggests that she is entitled to surviving spouse benefits.[35] Plaintiff Frisky-Watson does not explain, however, why it would have been impossible for Charles Watson to elect surviving spouse benefits before his death, nor does Plaintiff Frisky-Watson point to anything in the Plan that suggests that the Plan's normal rule of requiring a completed election form is altered by a plan participant's death.

### IV. Conclusion

For the foregoing reasons, the Defendant Board's motion for judgment on the administrative record is **GRANTED**, and Plaintiff Frisky-Watson's motion for judgement on the administrative record is **DENIED**.

IT IS SO ORDERED.

Dated: July 23, 2015  s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[34] Doc. 17 at 7.

[35] It is worth noting that the only case Plaintiff Frisky-Watson cites in support of this argument, *In re Guardianship of Hards*, No. 2007-L-150, 2009 WL 580806 (Ohio Ct. App. Mar. 6, 2009), describes an impossibility defense to contempt, and therefore has no bearing on this case.